# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:09CV436-FDW-DSC

| | |
|---|---|
| SUZANNE B. SMITH,<br>  Plaintiff, | )<br>)<br>) |
| vs. | )  **MEMORANDUM AND RECOMMENDATION**<br>)       **OF REMAND** |
| MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br>  Defendant. | )<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #9) and "Brief in Support ..." (document #9-1), both filed March 1, 2010; and Defendant's "Motion For Summary Judgment" (document #10) and "Memorandum in Support of the Commissioner's Decision" (document #11), both filed April 30, 2010. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned finds that Defendant's decision to deny Plaintiff Social Security disability benefits is not supported by substantial evidence. Accordingly, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be granted; that Defendant's Motion for Summary Judgment be denied; that the Commissioner's decision be reversed, and that this matter be remanded for further proceedings consistent with this Memorandum and Recommendation.

# I. PROCEDURAL HISTORY

On July 12, 2005, Plaintiff filed an application for a period of disability and Social Security Disability Benefits ("DIB"), alleging she was unable to work as of January 1, 2005. Plaintiff's claim was denied initially and on reconsideration.

Plaintiff requested a hearing, which was held on March 31, 2008. On June 5, 2008, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's claim, finding that Plaintiff was not disabled from January 1, 1995, her alleged onset date, through June 30, 2000, her date last insured ("DLI") (Tr. 8-16).[1] Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date; that Plaintiff suffered from pain in her back, shoulder, and neck due to a left shoulder rotator tear, thoracic sprain, and sialoadenitis, which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1; that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform the full range of sedentary unskilled work,[3] and that Plaintiff was able to return to her past

---

[1] In order to be eligible for Social Security disability benefits, a claimant must have attained insured status during the course of the claimant's employment. 20 C.F.R. § 404.101(a); Richardson v. Belcher, 404 U.S. 78, 84 (1971). Insured status is based on the number of quarters of coverage a claimant obtained during his or her employment. 20 C.F.R. § 404.110(a). Quarters of coverage are based upon a claimant's earnings during his or her employment. 20 C.F.R. § 404.140(a). Here, Plaintiff acquired sufficient quarters of coverage to remain insured through June 30, 2000 (Tr. 42-45.) Thus, the only relevant period the ALJ was required to consider, given the expiration of Plaintiff's insured status, was from January 1, 1995 through June 30, 2000. See Brown v. Astrue, No. 09-40094, 2009 WL 2776602, at * 20 (5th Cir. Sept. 2, 2009).

[2] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3] "Sedentary" work is defined in 20 C.F.R. § 404.1567(a) as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

relevant work as an office worker as that position was actually and generally performed. (Tr. 16.) Accordingly, the ALJ concluded that Plaintiff was <u>not</u> disabled from January 1, 1995, through June 30, 2000. (Tr. 16.)

Plaintiff filed a timely Request for Review of Hearing Decision. On September 27, 2009, the Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner.

Plaintiff filed this action on October 9, 2009. On appeal, Plaintiff contends among other things that the ALJ committed reversible error when he failed to mention or consider the opinion of Dr. Robert A. Nahouraii, Plaintiff's treating neurologist. <u>See</u> Plaintiff's "Brief in Support ..." at 2, 6-11 (document #9-1). The parties' cross-motions for summary judgment are ripe for disposition.

## II. <u>FACTUAL BACKGROUND</u>

Relevant to the dispositive issue raised on appeal, Plaintiff began receiving treatment from Dr. Robert A. Nahouraii, a neurologist, on June 19, 2001. (Tr. 133-146, 199, 233.) At the time of his initial evaluation, Dr. Nahouraii indicated that Plaintiff suffered from severe headaches with "a longstanding history of headaches…at least five severe ones per month…her headaches can last anywhere between two to five days." (Tr. 143.) Dr. Nahouraii diagnosed the presence of refractory migraine headaches lasting anywhere from two to six hours every other day associated with nausea and vomiting (Tr. 133-146, 199, 233.)

An MRI scan in March 2002, revealed the presence of an Arnold Chiari malformation[4] which gave a likely explanation for some of the Plaintiff's headaches, with the remaining explanation being

---

[4]*Dorland's Illustrated Medical Dictionary*, 28th Ed., 1994, defines "Arnold Chiari malformation" as a congenital anomaly where the cerebellum and medulla oblongata protrude into the spinal canal.

3

migrainous in nature (Tr. 210.) In his office note of November 15, 2004, Dr. Nahouraii indicated that Plaintiff was suffering from "refractory, unremitting migraine and chronic pain syndrome." (Tr. 199.) Regarding the vocational impact of Plaintiff's condition, Dr. Nahouraii stated on November 15, 2004:

> I am Ms. Smith's treating neurologist for unremitting, refractory to treatment, and unresponsive migraine and chronic pain. She has been through multiple medications and at this point is considering other treatment options. I would consider her pain syndrome and daily pain amount to be at a level that would prohibit her from working at her present position. Please contact me if you have any further questions.

(Tr. 199.)

As to the critical issue of the longitudinal nature of Plaintiff's condition, Dr. Nahouraii stated in a letter dated April 17, 2006:

> This letter is in support of Mr. Smith, as her treating neurologist for treatment unresponsive and unremitting pain. Chiari malformation has been documented in this patient. She has also had disc surgery. This Chiari malformation is congenital, has been **present well prior to the year 2000**, and contributes to this patient's pain syndrome. Multiple medication trials have failed and other therapies including neuromuscular blockade are being considered. Please consider this documentation for her neurologic pain syndrome.

(Tr. 133.) (Emphasis added).

In a supplemental report dated September 25, 2008, Dr. Nahouraii stated:

> This letter is to followup to my previous dictated letter from 2006 on Ms. Smith, her Chiari malformation and my previous medical treatment. She had Chiari malformation and has several restrictions, but in any instance this is a generally congenital malformation of posterior fossa and skull base incompatibility. Although children can certainly have this diagnosis, years of posterior fossa crowding are required making it a common 15, 18, or 20-year-old patient clinical picture. These symptoms could include, but are not limited to, eye movement abnormalities, posterior or cervicogenic headache like symptoms, hear loss, difficulty swallowing, or loss of balance. The congenital malformation was more likely than not present prior to the year 2000. Please contact me if any further questions need to be addressed for the court.

(Tr.. 233.)

It is undisputed that in his hearing decision, the ALJ failed to mention, much less evaluate, Dr. Nahouraii's treatment notes and opinions.

### III. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to re-weigh the evidence, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's

5

final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION OF CLAIM

The question before the ALJ was therefore whether the Plaintiff became "disabled" as that term of art is defined for Social Security purposes before the expiration of her insured status on June 30, 2000.[5] It is not enough for a claimant to show that she suffered from severe medical conditions or impairments which later became disabling; rather, the subject medical conditions must have become disabling prior to the date last insured. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971) (no "manifest error in the record of the prior administrative proceedings" where Plaintiff's conditions did not become disabling until after the expiration of his insured status).

As Plaintiff points out in her brief, the regulations specifically provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. §§404.1527(b), 416.927(d). The ALJ made no reference to Dr. Nahouraii's opinions in his decision.

In response, Defendant cites case law supporting the proposition that a doctor's opinion that is based on treatment rendered after the expiration of the plaintiff's insured status has limited

---

[5] Under the Social Security Act, 42 U.S.C. §301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically deter-minable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

probative value. Brown v. Astrue, No. 09-40094, 2009 WL 2776602, at * 3 (5th Cir. 2009). (physician's assessment as to disabling nature of plaintiff's impairment was of limited probative value and did not have to be given controlling weight where plaintiff's visits with the physician took place after the relevant time period); Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) (affirming ALJ's rejection of a treating physician's retrospective opinion where it was not substantiated by medical evidence from the period in question);Klett v. Barnhart, 303 F. Supp. 2d 477, 484 (S.D.N.Y. 2004) ("[A] retrospective diagnosis from a physician, particularly one who was not the claimant's treating physician during the relevant time period, may carry less weight if the diagnosis is inconsistent with other substantial evidence in the record.") (citing 20 C.F.R. § 404.1527(d)(4)). Defendant's argument misses the point. The cases Defendant cites establish that the ALJ should have considered Dr. Nahouraii's opinions and stated what weight, if any, he gave to those opinions.

Defendant invites the Court to speculate that had the ALJ considered Dr. Nahouraii's opinions, he would have given them less than controlling weight as he did those of another of Plaintiff's treating physicians, Dr. William J. Long, Jr. As discussed above, however, it is not the place of a reviewing court to reconsider the evidence. See Hays, 907 F.2d at 1456.

For these reasons, the ALJ's conclusions regarding Plaintiff's medical records are not supported by substantial evidence. At the next hearing, among any other issues that require further development, the ALJ should more fully address the medical record, including all medical opinions and then state what weight he assigns to those opinions.

## V. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that

Plaintiff's "Motion For Summary Judgment" (document #9) be **GRANTED**; that Defendant's "Motion for Summary Judgment" (document #10) be **DENIED**; that the Commissioner's decision be **REVERSED**; and this matter be **REMANDED** for a new hearing pursuant to Sentence Four of 42 U.S.C. § 405(g).[6]

## VI. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation of Remand to counsel for the parties; and to the Honorable Frank D. Whitney.

---

[6]Sentence Four authorizes "a judgment affirming, modifying, or reversing the decision ... with or without remanding the cause for a rehearing." Sullivan v. Finkelstein, 496 U.S. 617, 625 (1990).

**SO RECOMMENDED AND ORDERED.**

Signed: May 10, 2010

David S. Cayer
United States Magistrate Judge